IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 17, 2005

## CHRISTOPHER ROBERT SMITH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2001-A-421   Steve Dozier, Judge**

---

**No. M2004-01817-CCA-R3-PC - Filed July 22, 2005**

---

The petitioner, Christopher Robert Smith, seeks post-conviction relief on the basis of ineffective assistance of counsel. After being convicted by a jury of conspiracy to possess with intent to manufacture, deliver or sell over 300 grams of cocaine, the petitioner appealed. On direct appeal this Court affirmed both his conviction and sentence. State v. Christopher Robert Smith, No. M2001-02297-CCA-R3-CD, 2002 WL 31202132 (Tenn. Crim. App., at Nashville, Sept. 27, 2002), perm. app. denied (Feb. 24, 2003). The petitioner then filed a petition for post-conviction relief. After a hearing, the post-conviction court dismissed the petition. For the following reasons, we affirm the post-conviction court's dismissal of the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Christopher Robert Smith.

Paul G. Summers, Attorney General & Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, District Attorney General; Tammy Meade, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

The facts supporting the petitioner's underlying conviction were summarized by this Court on direct appeal as follows:

On February 3, 2000, members of the Twentieth Judicial District Drug Task Force were conducting an investigation of apartment number 1402 at the Cameron

Overlook Apartments in Nashville. The apartment was later discovered to be leased to the appellant and his co-defendant, Christopher Agee. The officers began surveillance of the apartment around 9:00 p.m. Sergeant James McWright parked in front of the apartment building where he could observe the parking lot and breezeway to the apartment. Officer Aaron Thomas parked in the rear of the apartment and had a direct visual on the door of the apartment. Other officers assisted in the surveillance by following persons entering and leaving the apartment.

At 9:38 p.m., the officers observed Shannon Adams arrive at the apartments in a red Mitsubishi and enter apartment 1402. Approximately twenty minutes later, Adams left the apartment and Officer Dannie Eddings followed her to Bailey's Sports Bar. When Adams arrived at Bailey's, a white male came out of the bar and got into Adams' vehicle. The male exited the vehicle after a few minutes and went back inside the bar. Adams then left Bailey's and returned to apartment 1402. Five minutes later, Adams again left the apartment and drove to Bailey's where she met with another male in a Ford Probe. After the meeting ended, Adams returned to the apartment.

Over an hour after Adams' return, officers observed the appellant, Agee and two other co-defendants, Scot Murphree and Scott Chase, leave the apartment. Agee had in his possession a white cloth bag. Agee and Murphree approached a silver Honda Civic and Agee placed the white bag in the vehicle's trunk. Murphree got into the Civic while Agee got into a red low-rider pick-up truck. Murphree then left the apartments in the Civic and the officers followed him to a nearby Kroger parking lot.

Meanwhile, Chase got into a maroon Honda Accord and pulled it into a parking space directly in front of the breezeway to apartment 1402. After the vehicle was parked, Sergeant McWright observed Chase place something into the trunk of the maroon Accord. Chase then got into a black Lexus driven by the appellant, and the Lexus and the red truck proceeded to the Kroger parking lot where they picked up Murphree and drove away, leaving the Civic in the parking lot. Sergeant McWright followed the suspects to Bailey's, after which the officer lost sight of the suspects for ten to fifteen minutes.

While McWright followed the suspects to Bailey's, "Vice K-Nine" arrived at the Kroger parking lot. After sniffing the vehicle, the drug dog made a positive indication that the Civic contained narcotics. The officers decided to wait for the suspects to return to Kroger before searching the Civic. When Agee and Murphree returned, the officers advised them that the dog had indicated the presence of drugs in the Civic and asked for permission to search the vehicle. Inside the trunk, the officers found drugs and drug paraphernalia inside a shaving kit and discovered the white bag Agee had earlier placed in the trunk. A search of the white bag revealed

over 800 grams of cocaine and sixty thousand dollars cash ($60,000). Agee and Murphree were immediately arrested.

About this time, Officer Eddings, who had assumed Sergeant McWright's surveillance position at the apartments, advised the officers at the Kroger parking lot that Adams was leaving the apartment. Officer Eddings followed Adams to Kroger where Sergeant McWright stopped Adams and walked the drug dog alongside Adams' red Mitsubishi. The dog made a positive identification for narcotics on the front passenger side and a search revealed a silver handbag containing cocaine and eight hundred dollars cash ($800). Shortly thereafter, Officer Eddings, who had returned to the apartments, advised Sergeant McWright that Chase and the appellant were leaving the apartment in the maroon Accord. Upon receiving this information, Sergeant McWright ordered the officer to arrest the remaining suspects. Officer Eddings and Officer Thomas arrested Chase and the appellant and transported them to the Kroger parking lot, leaving the black Lexus and maroon Accord at the apartments. The officers later had the Lexus towed, but searched the Accord to determine what Chase had earlier placed in the trunk. The officers found four thousand, four hundred and four dollars cash ($4404) inside the trunk.

While in custody at the Kroger parking lot, the appellant asked to speak alone with Sergeant McWright. The appellant confessed to Sergeant McWright that the cocaine and money belonged to him and Agee and that his girlfriend, Adams, had nothing to do with the drugs. The appellant informed Sergeant McWright that he was the "big man" and that he never sold anything smaller than ounces. The appellant admitted to selling eight to ten ounces at a time and to flying to San Antonio, Texas, to pick up kilos of cocaine. Sergeant McWright testified that he was not questioning the appellant at this time, but that the appellant was speaking freely in an effort to avoid the arrest of his girlfriend. The appellant offered to set up his supplier in San Antonio if Sergeant McWright would not arrest Adams.

While speaking with Sergeant McWright, the appellant also agreed to allow the officers to search the apartment he shared with Agee. However, he stated that there was nothing in the apartment because "I got everything out." The appellant told Sergeant McWright that he and Adams had gotten into a fight earlier that evening and he was worried she would contact the police; therefore, he had decided to place the cocaine and the money in the Civic and leave the vehicle in the Kroger parking lot. However, when the officers conducted a search of the apartment, they discovered a cocaine grinder on a headboard in the bedroom. The officers also found records of illegal drug sales on the kitchen counter, along with a "kilogram wrapper" with cocaine residue and markings typical of drug packaging material. The appellant's fingerprint was found on the "wrapper."

Christopher Robert Smith, 2002 WL 31202132, at *2-3.

At the conclusion of a jury trial, the petitioner was convicted by a jury of conspiracy to possess with intent to manufacture, sell or deliver over 300 grams of cocaine. As a result, the petitioner was sentenced to a twenty-four (24) years and fined $50,000. On direct appeal, the petitioner challenged the sufficiency of the evidence and his sentence as excessive. This Court upheld both the petitioner's conviction and sentence. State v. Christopher Robert Smith, No. M2001-02297-CCA-R3-CD, 2002 WL 31202132 (Tenn. Crim. App., at Nashville, Sept. 27, 2002), perm. app. denied (Feb. 24, 2003). The petitioner's application for permission to appeal to the Tennessee Supreme Court was denied on February 24, 2003.

The petitioner subsequently filed a pro se petition for post-conviction relief, alleging, among other things, that he received ineffective assistance of counsel.[1]

## Evidence at the Post-conviction Hearing

The post-conviction court held a hearing on the petition on June 25, 2004. At the hearing, the petitioner testified that he felt that his trial counsel should have filed a motion to suppress Sergeant McWright's testimony. The petitioner testified that he did not confess to Sergeant McWright about being the "big man" in the drug operation and that he repeatedly told his trial counsel that he did not confess. The petitioner also claimed that the fingerprint found on the cocaine wrapper "didn't look like no [sic] fingerprint to me," but admitted that he may have touched the cocaine wrapper when he was cleaning up the apartment. Again, the petitioner asserted that he had no involvement in the drug operation.

The petitioner testified that he received ineffective assistance of counsel because trial counsel only met with him one (1) time prior to trial. Further, the petitioner claimed that he received ineffective assistance of counsel at trial because he witnessed trial counsel working a crossword puzzle during Sergeant McWright's testimony on direct examination. The petitioner claimed that trial counsel did not effectively cross-examine the witness as a result of his lack of attention to the direct examination, but was unable to offer any specific evidence as to how trial counsel failed to effectively cross-examine the witness. The petitioner also claimed that trial counsel prohibited him from testifying. However, on cross-examination, the petitioner admitted that the ultimate decision as to whether he would testify was his to make.

The petitioner's sister, Tammy Smith, testified that she was present at trial and observed trial counsel writing on what could have been a newspaper. Ms. Smith was unable to pinpoint the precise moment during trial when she witnessed trial counsel writing and was unable to determine whether trial counsel was actually writing on a newspaper.

---

[1]Although the petitioner claims that an amended petition was filed after counsel was appointed, an amended petition does not appear in the record before this Court.

Trial counsel testified that he received his law license in 1983 and that, since that time, had practiced primarily criminal law. Trial counsel claimed that he met with the petitioner at least five (5) or six (6) times prior to trial and discussed his trial strategy each time. According to trial counsel, the petitioner told him on one (1) occasion that he made a confession to the police. He stated that he remembered asking the petitioner on several occasions why he would tell the police anything and that the petitioner replied that he did it to keep his girlfriend out of jail. Trial counsel testified that based on these conversations, he "thought a lot about it" and "couldn't find any legal basis to make a motion [to suppress]." Further, trial counsel testified that he often brings crossword puzzles to court and works them during "lulls." Trial counsel stated that he did not work a crossword puzzle during the petitioner's trial, and that he took notes during Sergeant McWright's testimony to prepare for cross-examination.

At the conclusion of the hearing, the post-conviction court made the following findings:

[T]he burden is that he [the petitioner] prove, by a clear, convincing standard, the allegations contained in the petition.

And those allegations in general are the ineffective assistance of counsel and the failure to file the motion to suppress. There was, I notice, a Motion to Sever filed; but that's not at issue here.

[Trial counsel], on the other hand, who was here and represented, and I - - represented [the petitioner] and I've looked back through my notes pertaining to this trial. And I don't see any indication in my notes and do not recall ever - - and in this case more particular - - ever seeing [trial counsel] doing anything but representing his client, in reference to the crossword puzzle.

And I would, obviously, have made note of that or drawn the attention to someone that [trial counsel], if that was occurring, was not - - or should put it up or, if it was a problem, would've drawn his attention to it.

But - - more importantly, in terms of the ineffective assistance claim in general, I mean [the petitioner] has to show by that standard that he was prejudiced by [trial counsel's] lack of attention to his case in some regard.

And what it boils down to is him - - him, [the petitioner] - - claiming that he didn't - - he [trial counsel] - - didn't visit him enough.

And that's been contradicted by [trial counsel's] statement that he did, in fact, visit him and that [the petitioner] did, in fact, tell [trial counsel] that he'd made the statements that [the petitioner's] now claiming that there was no suppression motion filed.

I recall - - having looked back through the notes - - recall Sergeant McWright's testimony.  I don't find any basis for a motion being filed or any reason to've [sic] granted such a motion, if it had been filed.  So I don't see how [the petitioner] was prejudiced in that regard.

Sitting here discussing this case with [the petitioner], and his other case, I in no way fault [the petitioner], or any defendant, for pursuing legal avenues that the law allows them to pursue.

But to be favorable as I can to [the petitioner] but yet convey my findings for the record, I find [the petitioner's] testimony - - I was gonna say "unbelievable;" I'll just leave it as saying "not credible," . . . .

. . . .

So, I do credit [trial counsel's] testimony.  I mean, [trial counsel] basically was presented with some facts that he had no other defense but to blame Mr. Agee and blame the other people arrested or other people involved in the case and argue, which he did, about the statement being just puffing or in an attempt to assist the girlfriend.

So, based on these findings and the petitioner's burden, I don't think it has been carried; and I'll deny this petition.

On appeal, the petitioner challenges the post-conviction court's dismissal of the petition.

Post-Conviction Standard of Review

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing.  See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999).  The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise.  See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).  During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this court is bound by the court's findings unless the evidence in the record preponderates against those findings.  See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court.  See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). All questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts.  See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578-79.  However, the post-conviction

court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## Ineffective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

On appeal, the petitioner argues that trial counsel was ineffective because he: (1) failed to file a motion to suppress; and (2) worked a crossword puzzle during the direct examination of Sergeant McWright.

## Motion to Suppress

On appeal, the petitioner claims that trial counsel was ineffective because he failed to file a motion to suppress the testimony of Sergeant McWright in which Sergeant McWright recounted the petitioner's oral confession.

The evidence at the post-conviction hearing indicated that trial counsel could not "find any legal basis to make a motion [to suppress]. [The petitioner] had told me he had made those statements to the police . . . and I wasn't gonna [sic] file a frivolous motion." The petitioner claimed that he told trial counsel that he did not confess his involvement to the police.

In denying the petition, the trial court gave credibility to the testimony of trial counsel and determined that there was "no basis" for the filing of a motion to suppress. As stated above, "questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact" and the post-conviction court's credibility determinations are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The evidence does not preponderate against the trial court's credibility determination herein. The petitioner has failed to prove by clear and convincing evidence that trial counsel was ineffective in the failing to file a motion to suppress. This issue is without merit.

Crossword Puzzle

The petitioner next claims that trial counsel was ineffective because he worked a crossword puzzle during the direct examination of Sergeant McWright. In support of his claim, the petitioner offered his own testimony in which he claimed he saw trial counsel working the puzzle. The petitioner also called his sister, Ms. Smith, as a witness. Ms. Smith testified that she saw trial counsel "writing on a paper" that could have been a newspaper. Trial counsel testified that he often brought crossword puzzles to court to fill in the "lulls," but specifically remembered that he took notes during Sergeant McWright's testimony in order to prepare himself for cross-examination.

Again, in denying the petition, the trial court gave credibility to the testimony of trial counsel and determined that there was "no indication" that trial counsel did anything but "represent his client" during trial. The evidence does not preponderate against the trial court's credibility determination herein. Odom, 928 S.W.2d at 23. The petitioner has failed to prove by clear and convincing evidence that trial counsel was ineffective. Further, the petitioner has failed to show that he was prejudiced by trial counsel's actions. This issue is without merit.

Conclusion

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE

-8-